IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| WENDY GAIL WHITE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 1:06CV354-SRW |
| ) | |
| MICHAEL ASTRUE, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION**

### **I. INTRODUCTION**

The plaintiff applied for disability insurance benefits pursuant to Titles II and XVI of the Social Security Act, 42 U.S.C. § 401, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381, alleging that she was unable to work because of a disability. Her application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge (ALJ). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review under 42 U.S.C. §§

---

[1] Under the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

405(g) and 1631(c)(3).  Under 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the United States Magistrate Judge (Docs. #5-6, filed April 26, 2006).   Based on its review of the record and the briefs of the parties, the court concludes that the decision of the Commissioner should be reversed and remanded.

## II.  STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...

To make this determination,[2] the Commissioner employs a five step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1? [the *Listing of Impairments*]
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which support the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. ISSUES

The plaintiff was twenty-seven years old at the time of the hearing before the ALJ and has a high school education with an associate degree. The plaintiff's prior work experience

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

includes work as a receptionist, substitute teacher, cashier, and bank teller. Following the administrative hearing, the ALJ concluded that the plaintiff had no "severe" impairments and was therefore not disabled. The ALJ also made an alternative finding that the plaintiff retained the residual functional capacity to perform her past relevant work as a receptionist or cashier.

The plaintiff presents three issues for review: (1) whether the ALJ erred in finding that the plaintiff did not suffer from severe mental impairments, (2) whether the ALJ erred in finding that the plaintiff did not suffer from severe physical impairments, and (3) whether the Appeals Council erred in not remanding the case based on new evidence.

## IV. DISCUSSION

### A. Mental Impairments

The plaintiff argues that the ALJ erred in finding that the plaintiff had no severe mental impairments. The court agrees.

The record includes the medical reports of Dr. Steve Sherrer, the plaintiff's general practice physician (Tr. 260-77, 287, 304-08). While these records largely concern the plaintiff's physical complaints, they do include "impressions" of malaise and, sometimes, depression, from October 2002-February 2004.[4] The plaintiff's treating rheumatologist, Dr.

---

[4] Some of these impressions suggest emotional problems related to specific stresses: the death of the plaintiff's father (Tr. 274), the loss of her job (Tr. 269), and physical abuse by her boyfriend (Tr. 254, 265). Two of these records, including the last noted, are practically unreadable (Tr. 265, 275). However, the impression of malaise is consistent enough to meet the duration requirement of 20 C.F.R. §§ 404.1509 and 416.909, and to support the finding of the state agency psychologist discussed below.

Parks Pratt, diagnosed the plaintiff with depression and anxiety in February 2003 (Tr. 296, 303).  The previous month, Dr. Pratt noted a "history" of depression and anxiety, suggested that the plaintiff needed psychological assistance and counseling, and expressed grave concern that she would develop "the maladaptive behaviors of the 'professional patient'" (Tr. 300-01).  The record also contains the report of one examining psychologist, Dr. Robert Nolan, who saw the plaintiff in April 2003 (Tr. 203-06).  Dr. Nolan's diagnostic impression included depression as well as pain disorder caused by fibromyalgia.  Dr. Nolan found that the plaintiff was alert, coherent, and rational, with no signs of mental slowness or retardation, and that her ability to understand workplace expectations was intact (Tr. 206).  Based on these records, Ellen N. Eno, Ph.D., a state agency psychologist,[5] completed a psychiatric review technique and functional capacities evaluation in May 2003 (Tr. 207-24).   Dr. Eno found that the plaintiff's impairments were severe (Tr. 207) in that they would cause a "moderate" limitation in the plaintiff's ability to maintain concentration, persistence, or pace (Tr. 217).

The ALJ wrote as follows:

Turning to the claimant's allegation of a severe mental impairment, the claimant testified that she had experienced depression, insomnia and fatigue. The undersigned notes that Dr. Nolan, a consultative psychologist, reported that the claimant exhibited signs and symptoms of major depression based

---

[5] The government correctly points out (doc. #15, filed Oct. 23, 2006, p. 5) that Dr. Eno's signature does not include a degree (M.D. or Ph.D.).  However, this appears to be an oversight, as Dr. Eno has performed psychiatric reviews for the Disability Determination Dervice in several previous cases in which her Ph.D. has been noted.  *See Blake v. Massanari*, 2001 WL 530697 at *5 (S.D. Ala. Apr. 26, 2001); *Goodley ex rel Goodley v. Apfel*, 2000 WL 718814 at *4 (S.D. Ala. May 15, 2000); *Martinez v. Apfel*, 2000 WL 718815 at *5 (S.D. Ala. May 5, 2000).

> **solely** on her subjective responses [Tr. 203-06].  The undersigned notes that *the claimant failed to seek mental health treatment for any alleged mental impairment during the period of adjudication*, and her alleged mental issues appear to have been situational in nature.  For example, the claimant presented to the emergency room with complaints of an anxiety attack in January 2003.  Dr. Sherrer, however, reported that the claimant's alleged anxiety was associated with her job loss [Tr. 269].  Moreover, Dr. Nolan, despite his impression of depression, noted that the claimant provided appropriate and abstract interpretations of common proverbs and used appropriate judgment in problem-solving.  He further indicated that the claimant appeared alert, rational and coherent despite her allegation that she experienced severe pain that interfered with her ability to concentrate or stay on task.  As a result, Dr. Nolan opined that the claimant's ability to grasp and understand the expectations of the workplace [was] intact [Tr. 206]...Moreover, the claimant *has not been restricted in her ability to maintain concentration, persistence or pace* and has experienced no limitation regarding decompensation in a work setting.  Again, as noted earlier, *Dr. Nolan reported that the claimant did not demonstrate deficiencies in the area of concentration* [Tr. 203-06].

(Tr. 24-25) (italics added, boldface in original).

The ALJ nowhere addressed the diagnoses of depression and malaise by two of the plaintiff's treating physicians.  The ALJ's statement that the plaintiff "failed to seek mental health treatment" is at best partly accurate; while it is true that the plaintiff did not see a psychiatric specialist for mental health problems, she did receive treatment and medication for mental health problems from Dr. Sherrer.  The ALJ's concern that Dr. Nolan's report was based on the plaintiff's subjective complaints was legitimate.  Under 20 C.F.R. §§ 404.1508, 404.1528, 416.908, and 416.928, to be considered by the Commissioner, impairments must be based on "signs, symptoms, and laboratory findings," not only the plaintiff's own statement of symptoms. However, Dr. Nolan's report, under "mental status exam," includes the observation that "[the plaintiff's] mood is described as depressed," and mood is an

6

acceptable clinical sign under 20 C.F.R. §§ 404.1528(b) and 416.928(b). Dr. Nolan's opinion thus does not appear to be based "solely" on the plaintiff's subjective complaints. Further, the court's independent review does not support the ALJ's statement that "Dr. Nolan reported that the claimant did not demonstrate deficiencies in the area of concentration." In fact, Dr. Nolan stated that "[the plaintiff] reports concentration is impaired...is distractible and has trouble with short-term memory, often displacing things and becoming disorganized," and "[the plaintiff] is reporting some problems with concentration and attention, and short-term memory that she attributes to being distracted" (Tr. 205-06). The ALJ did not correctly characterize important parts of the evidence.

In addition, as noted by the plaintiff, the ALJ's report includes no statement as to the weight given to Dr. Eno's opinion. Under 20 C.F.R. §§ 404.1527(f)(2)(ii) and 416.927f(2)(ii), unless the ALJ gives controlling weight to the opinion of a treating source (as the ALJ did not do in this case), he is required to explain the weight given to a state agency psychologist. Failure to do so can be reversible error. *Vuxta v. Commissioner*, 194 Fed. Appx. 874, 877 (11th Cir. Sept. 8, 2006). In this case, the psychologist's findings, if accepted, would render the plaintiff's psychological problems "severe" under 20 C.F.R. §§ 404.1520a(d) and 416.920a(d), and Listing 12.00C of the *Listing of Impairments*. The ALJ did not cite, and independent review of the record does not reveal, any countervailing medical opinion that might render these problems less than severe. As noted above, the ALJ did not provide sufficient reasons to discount the medical opinions that do occur in the record, and which suggest that the plaintiff's mental impairments were severe. The ALJ's

finding that the plaintiff had no severe psychological impairments is not supported by substantial evidence.[6]

Under the circumstances of this case, the ALJ's alternative finding that the plaintiff could perform her past relevant work is unavailing.  Depression is a nonexertional impairment, *see Davis v. Heckler*, 748 F.2d 293, 295 (5th Cir. 1984); and a finding that a severe, nonexertional impairment does not limit a claimant from working generally requires vocational expert testimony based on a complete hypothetical question. *See Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). Here, the ALJ's relevant hypothetical questions assumed, in the first instance, no psychological limitations, and in the second, only a limitation to unskilled or semiskilled work (Tr. 464-65).  Neither of these addresses the emotional problems noted by the treating physicians, the examining psychologist, or the reviewing psychologist.[7]  Thus, the ALJ's alternative finding could only stand if his finding that these problems were not severe was supported by substantial evidence.  As discussed above, it was not.  The ALJ's alternative finding is not supported by substantial evidence.   The decision of the ALJ is due to be reversed.

**B.  Physical Impairments**

---

[6] Gynecological records from October 2004 and February 2005 (Tr. 323, 326) suggest that the plaintiff's depression later may have resolved; but the other records cover a period exceeding twelve months, which must still be properly considered.

[7] Indeed, the findings of Dr. Nolan (Tr. 205-06) and the plaintiff's educational level (Tr. 203) suggest that the plaintiff's intellect is not impaired, whatever her emotional problems may be.

8

The plaintiff argues that the ALJ erred in failing to find that the plaintiff's physical impairments, specifically fibromyalgia and endometriosis, were severe. The record shows several episodes of endometriosis and adhesion. However, these problems as documented did not persist during the adjudicated period. The plaintiff alleged disability beginning January 15, 2003 (Tr. 18, 53). The record shows that the plaintiff had operations for ovarian cysts with pain, endometriosis, and adhesion in 2001-02 (Tr. 146, 157, 180, 186, 201), but that she had no current complaints related to endometriosis or adhesion by November 2002 (Tr. 273-74). In February 2003, her treating rheumatologist diagnosed only a "history" of endometriosis and pelvic pain (Tr. 296), and her treating gynecologist noted "status post" endometriosis during this same period (Tr. 233-36, 239, 242), with a *possible* relapse of adhesion in February 2003 (Tr. 179). CT scans later that month showed little or no abnormality (Tr. 245, 248). The next month, the plaintiff's treating gynecologist suggested that she was not disabled "from a gynecological standpoint" (Tr. 178). Dr. Sherrer's reports from 2003-04 likewise do not show any diagnosis or complaints of adhesion or endometriosis (Tr. 261, 266-67, 306), and the pain the plaintiff experienced in October 2004 (Tr. 327) appears to have resolved by the following February (Tr. 325). While the plaintiff did have further difficulties that led to a hysterectomy in January 2006 (Tr. 319-22), these lie outside the adjudicated period, which ended when the ALJ issued his opinion on December 1, 2004 (Tr. 27).

With respect to fibromyalgia, Dr. Parks Pratt, the plaintiff's treating rheumatologist,[8] listed fibromyalgia as a "leading *possible* diagnosis" in January 2003, approximately two months after she first reported symptoms (Tr. 299-300). The next month, Dr. Pratt did not list fibromyalgia among his diagnoses, all of which were psychological in nature (Tr. 296). The ALJ properly relied upon the opinion of Dr. Pratt in finding that the plaintiff did not suffer from severe fibromyalgia (Tr. 23). The decision of the ALJ is not due to be reversed on this ground.

Because the court is reversing the Commissioner's decision based on error by the ALJ, the court pretermits discussion of the additional evidence submitted to the Appeals Council. This evidence will be available for consideration on remand.

## V. CONCLUSION

Based on the foregoing analysis, the court concludes that the decision of the Commissioner is due to be reversed and remanded for further proceedings consistent with this opinion. A separate order will issue.

DONE, this 20th day of April, 2007.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE

---

[8] A rheumatologist is the appropriate specialist for diagnosing and treating fibromyalgia. *Bruet v. Barnhart*, 313 F. Supp. 2d 1338, 1346 (M.D. Fla. 2004).